UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

THOMAS J. WALTOS,

                              Plaintiff,

v.                                                          5:24-CV-1287
                                                            (GTS/MJK)
UNITED STATES OF AMERICA;
UNITED STATES POSTAL SERVICE; and
JANE DOE, in her official capacity as a
United States Postal Service Employee,

                              Defendants.
_____

APPEARANCES:                              OF COUNSEL:

COSTELLO, COONEY & FEARON, PLLC           DONALD S. DiBENEDETTO, ESQ.
   Counsel for Plaintiff                  STACEY A. MARRIS, ESQ.
211 W. Jefferson Street, Suite 1
Syracuse, NY 13202

UNITED STATES ATTORNEY FOR THE            EMER M. STACK, ESQ.
NORTHERN DISTRICT OF NEW YORK             Assistant United States Attorney
   Counsel for Defendants
100 S Clinton Street, Suite 9000
Syracuse, NY 13261

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

Currently before the Court, in this personal injury action filed by Thomas J. Waltos

("Plaintiff") against the United States of America ("USA"), United States Postal Service

("USPS"), and employee Jane Doe in her official capacity (collectively "Defendants"), is

Defendants' motion to dismiss Plaintiff's Complaint for lack of subject-matter jurisdiction

pursuant to Fed. R. Civ. P. 21(b)(1).   (Dkt. No. 8.)   For the reasons set forth below, Defendants'

1

motion is granted.

## I.    RELEVANT BACKGROUND

### A.    Plaintiff's Complaint

Generally, Plaintiff's Complaint asserts claims under the Federal Tort Claims Act

("FTCA") against the three Defendants in this action based on the following factual allegations.

(*See generally* Dkt. No. 1.)

On December 31, 2021, Plaintiff was employed as a truck driver by Salanger Trucking,

which contracts to transport mail to and from USPS's facility located at 5640 East Taft Road in

Syracuse, New York (the "Taft Road Facility").   (*Id*. at ¶¶ 8-9, 11.)   More specifically, Plaintiff

was assisting USPS personnel with loading and unloading mail at a loading dock at USPS's Taft

Road Facility.   (*Id*. at ¶¶ 11-21.)

USPS has specific procedures applicable to the safety of work at loading docks.   (*Id*. at ¶

12.)[1]

 Pursuant to those procedures, after the driver's truck has been positioned at a specific loading

dock, the truck driver is required to check in with a designated USPS employee, called an

"Expeditor." (*Id*. at ¶ 13.) Numbered dock tags, located outside of the dock doors, are used to

verify the dock at which a driver is parked. (*Id*. at ¶ 14.) After a driver parks his or her truck at a

dock, the driver is required to bring the numbered dock tag inside, and the Expeditor is required

to obtain the dock tag from the driver. (*Id*. at ¶ 15.)   Then the driver waits for the Expeditor to

open the appropriate overhead door corresponding to the numbered dock tag and give the driver

clearance to open the truck door. (*Id*. at ¶ 16.) Only USPS personnel can open and close

---

[1]     A copy of these procedures has been provided by Defendants.   (Dkt. No. 8, Attach. 3, at
17-51 [Herbst Decl., attaching "Standard Operating Procedures for Receipt and Dispatch of
Vehicles"].)

overhead dock doors. (*Id*. at ¶ 12.)

On the day in question, Richard Burleigh, who was also an employee of Salanger Trucking, had positioned his truck at a certain loading dock at the Taft Road Facility. (*Id.* at ¶ 17.) After Mr. Burleigh's truck was unloaded, the Expeditor – Jane Doe – closed the overhead door to the loading dock used by Mr. Burleigh and returned that loading dock tag to Mr. Burleigh; Mr. Burleigh then exited the building, returned the loading dock tag outside of the dock doors, and prepared to leave. (*Id*. at ¶ 18.)

Meanwhile, Plaintiff positioned his truck at a loading dock next to the one used by Mr. Burleigh, then entered the building, and reported to the Expeditor. (*Id*. at ¶ 19.) However, the Expeditor then opened the *wrong* overhead dock door – specifically, the door to the loading dock used by *Mr. Burleigh* – and gave Plaintiff clearance to open his truck door.   (*Id*. at ¶¶ 20, 25.) As Plaintiff attempted to open the door to what he thought was his truck (but was actually the door to Mr. Burleigh's truck), Mr. Burleigh pulled away, causing Plaintiff to fall and sustain serious injuries. (*Id*. at ¶ 21.)

**B.    Summary of Parties' Arguments**

**1.    Defendants' Memorandum of Law**

Generally, in their memorandum of law, Defendants assert three arguments.   (Dkt. No. 8, Attach. 1.)   First, Defendants argue, the Court lacks subject-matter jurisdiction over Plaintiff's FTCA claim against Defendants USPS and "Jane Doe" because those Defendants are not proper Defendants under the FTCA.   (*Id*. at 10-11 [attaching pages "8" and "9" of Defs.' Memo. of Law].)   More specifically, Defendants argue, the FTCA provides only a limited waiver of sovereign immunity from suit for tort claims against the United States of America, not its

3

agencies or employees.   (*Id.*)

Second, Defendants argue, the Court also lacks subject-matter jurisdiction over Plaintiff's FTCA claim against Defendant USA, because the exclusivity of workers' compensation benefits bars that claim.   (*Id.* at 11-18 [attaching pages "9" through "16" of Defs.' Memo. of Law].) More specifically, Defendants argue as follows: (a) a court considering an FTCA claim is bound to apply the law of the state where the accident occurred; (b) under New York law, an employee injured on the job may seek redress only under the state's workers' compensation law (and may not bring a separate civil action); (c) furthermore, under the state's workers' compensation law, the exclusivity of a worker's compensation remedy (for an injury on the job) extends not only to the worker's "general employer" (that is, the one that is responsible for payment of wages and maintaining workers' compensation and other employee benefits) but also to the worker's "special employer" (that is, another employer to whom the worker is transferred for a limited time of whatever duration for service); (d) here, Plaintiff has already received a total of $179,241.64 from his employer, Salanger Trucking, pursuant to a workers' compensation policy, for the injury in question; (e) Plaintiff's receipt of these workers' compensation benefits not only precludes any further tort recovery (based on the same incident) from Salanger Trucking, but also precludes any further tort recovery (based on the same incident) from Defendant USA, which was Plaintiff's "special employer" under the state's workers' compensation law; and (f) Plaintiff was a "special employee" of Defendant USA, because, during the incident in question, he was under the exclusive control of Defendant USA and performing work in furtherance of Defendant USA's business. (*Id.*)

Third, Defendants argue, leave to amend should be denied as futile, because, based on the

facts already alleged (and assumed to be true), the Court lacks subject-matter jurisdiction over any action in which an amended complaint could be filed.   (*Id*. at 18 [attaching page "16" of Defs.' Memo. of Law].)

       **2.**        **Plaintiff's Opposition Memorandum of Law**

Generally, in his opposition memorandum of law, Plaintiff argues that he was not a "special employee" of Defendant USA, which has offered no evidence or caselaw supporting its argument to the contrary.   (Dkt. No. 15, Attach. 9, at 7-16 [attaching pages "5" through "14" of Plf.'s Opp'n Memo. of Law].) More specifically, Plaintiff argues as follows: (a) although a "special employer" is not statutorily defined in New York, case law clearly demonstrates that the principal factors to be considered in rendering this determination include who has the right to control the employee's work, who is responsible for the payment of wages and the furnishing of equipment, who has the right to discharge the employee, and whether the work being performed was in furtherance of the "special employer's" or the "general employer's" business; (b) furthermore, the continuation of exclusive "general employment" is presumed, and the party seeking to establish "special employment" has the burden of overcoming the presumption of exclusive "general employment" (through a clear demonstration of the complete cessation of control by the "general employer" and the assumption of complete and exclusive control by the "special employer," such as through an uncontroverted record); (c) here, the only proof offered by Defendant USA of the existence of a "special employment" relationship is the HCR Contract (which expressly refers only to Salanger Trucking employees and makes no mention of USPS having the power to hire, discharge, supervise or pay the salaries of Salanger Trucking's employees) and some postal procedures (which a USPS employee sent to Salanger Trucking to

5

review with its drivers); (d) meanwhile, Plaintiff has offered declarations from himself and

company President Richard Salanger establishing that Plaintiff was hired exclusively by

Salanger Trucking, his wages and hours were set by Salanger Trucking, he was paid and trained

by Salanger Trucking, he was never training or supervised by any USPS employees, and

Salanger Trucking retained the authority to terminate him; (e) cases cited by Defendants from

other states (some of which have specific statutory definitions covering the issue) are

distinguishable; (f) more analogous is a case from the WDNY regarding an independent

contractor (*Kwitek v. USPS*, 694 F. Supp.2d 219 [W.D.N.Y. 2010]); and (g) at the very least,

Plaintiff should be allowed to conduct discovery on this issue and have it resolved on a motion

for summary judgment. (*Id.*)

### 3.    Defendants' Reply Memorandum of Law

Generally, in their reply memorandum of law, Defendants assert four arguments.   (Dkt.

No. 16.)   First, Defendants argue, because Plaintiff has not opposed Defendants' argument that

Defendants USPS and "Jane Doe" are not proper Defendants in this FTCA action, Plaintiff has

effectively conceded the merit of that argument, and Plaintiff's claims against those two

Defendants must be dismissed.   (*Id*. at 4 [attaching page "2" of Defs.' Reply Memo. of Law].)

Second, Defendants argue, the facts asserted in Plaintiff's opposition (which are either

not determinative of the issue or inconsistent with those pleaded in his Complaint) do not defeat

his status as a "special employee" for the following reasons: (a) according to the allegations set

forth in Paragraphs 12-16, 20, and 25 of Plaintiff's Complaint, Defendant USPS controlled the

manner, details and result of his work, and the Court may discredit Plaintiff's contrary assertions

in his response declaration; (b) the fact that Salanger Trucking hired, paid, and insured Plaintiff

is not fatal to Defendant USA' "special employment" relationship with Plaintiff (pursuant to which Plaintiff may, of course, continue to be a "general employee" of Salanger Trucking); and (c) nor would the fact that only Salanger Trucking had the power to discharge Plaintiff be fatal to Defendant USA' "special employment" relationship with Plaintiff, and in any event, in fact, Defendant USPS was also empowered to discharge Plaintiff from his duties, pursuant to the provision of the HCR Contract that permitted Defendant USPS to "den[y] or revoke[]" Plaintiff's clearance to perform contractual services.   (*Id*. at 4-8 [attaching pages "2" through "6" of Defs.' Reply Memo. of Law].)

Third, Defendants argue, their evidence and cited caselaw demonstrate Defendant USA's "special employment" relationship with Plaintiff.   (*Id*. at 8-12 [attaching pages "6" through "10" of Defs.' Reply Memo. of Law].)   More specifically, Defendants argue as follows: (a) the "special employment" relationship between Plaintiff and Defendant USA is established by Plaintiff's own allegations from his Complaint, the plain terms of the HCR Contract, and the Standard Operating Procedure for Receipt and Dispatch of Vehicles ("Dock SOP"); (b) the fact that the Dock SOP directed Salanger Trucking to convey its contents to drivers is immaterial to the substantive terms of the Dock SOP itself, which establish the rules governing how Plaintiff must proceed on the loading dock under the direction of USPS personnel; (c) similarly, the fact that the HCR Contract expressly refers only to Salanger Trucking employees is immaterial, because a finding that Plaintiff was a "special employee" of Defendant USA does not require a finding that Plaintiff was not an employee of Salanger Trucking in any sense; (d) Plaintiff's attempt to distinguish Defendants' cases fails, because the analysis of "statutory employment" used in those other states turns on whether, at the time of the injury, the employee was

performing work consistent with or in furtherance of the special employer's business (much like

New York's "special employer" analysis); and (e) Plaintiff's reliance on *Kwitek v. USPS*, 694 F.

Supp.2d 219 (W.D.N.Y. 2010), is misplaced, because it concerns two doctrines regarding

FTCA's waiver of sovereign immunity (i.e., the independent contractor and discretionary

function exceptions) which are not at issue here.   (*Id.*)

Fourth, Defendants argue, contrary to Plaintiff's assertion, the Court may determine

"special employment" as a matter of law based on the undisputed facts of this case, specifically,

those created by Plaintiff's own allegations from his Complaint, the plain terms of the HCR

Contract, and the Dock SOP.   (*Id.* at 12 [attaching page "10" of Defs.' Reply Memo. of Law].)

## II.    GOVERNING LEGAL STANDARDS

### A.    Motion to Dismiss for Lack of Subject-Matter Jurisdiction      "It is a

fundamental precept that federal courts are courts of limited jurisdiction."   *Owen

Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978).   Generally, "[a]

case is properly dismissed for lack of subject matter jurisdiction under Rule

12(b)(1) when the district court lacks the statutory or constitutional power to

adjudicate it." *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R.

Civ. P. 12[b][1]).   "In resolving a motion to dismiss for lack of subject matter

jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside

the pleadings." *Makarova*, 201 F.3d at 113 (citing *Kamen v. Am. Tel. & Tel. Co.*,

791 F.2d 1006, 1011 [2d Cir. 1986]).

More specifically, "[w]hen . . . a jurisdictional challenge under Fed. R. Civ. P. 12(b)(1) is

addressed to the complaint, a court accepts as true all the factual allegations in the complaint and

must draw all reasonable inferences in favor of the plaintiff." *Lunney v. U.S.*, 319 F.3d 550, 554 (2d Cir. 2003) (citing, *inter alia*, *Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton Coll.*, 128 F.3d 59, 63 [2d Cir. 1997]); *see also Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (stating that a district court may properly dismiss a case for lack of subject matter jurisdiction under Rule 12[b][1] only after "[c]onstruing all ambiguities and drawing all inferences" in a plaintiff's favor) (citing *Makarova*, 201 F.3d at 113).

However, when a defendant challenges the factual basis for the plaintiff's assertion of jurisdiction, "[j]urisdiction must be shown affirmatively, and that showing is not made [merely] by drawing from the pleadings inferences favorable to the party asserting it."   *Shipping Fin. Servs. Corp v. Drakos*, 140 F.3d 129, 131 (2d Cir.1998); *accord, APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003); *see also Robinson v. Gov't of Malaysia*, 269 F.3d 133, 140 (2d Cir. 2001) ("In a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), the defendant may challenge either the legal or factual sufficiency of the plaintiff's assertion of jurisdiction, or both. . . . If the defendant challenges only the legal sufficiency of the plaintiff's jurisdictional allegations . . . , the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff . . . .   But where evidence relevant to the jurisdictional question is before the court, the district court . . . may refer to that evidence.") (internal quotation marks and citations omitted).

In such a case, "[a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."   *Makarova*, 201 F.3d at 113 (citing *Malik v. Meissner*, 82 F.3d 560, 562 [2d Cir. 1996]); *see also Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003) ("Plaintiffs bear the burden of showing by a preponderance of the evidence that subject matter jurisdiction exists.") (internal quotation marks omitted).

9

Finally, the issue of whether the United States is a "special employer" under New York

State law is one of subject-matter jurisdiction in nature because it regards whether the United

States has waived its sovereign immunity under the FTCA.   *See Makarova*, 201 F.3d at 113-14

("The doctrine of sovereign immunity is jurisdictional in nature . . . , and therefore to prevail, the

plaintiff bears the burden of establishing that her claims fall within an applicable waiver. . . .

Both parties concede that the FTCA governs Makarova's complaint, and that, accordingly,

subject matter jurisdiction exists only if a private defendant could have been sued by Makarova

in Washington, D.C.—the place where the act or omission occurred.") (internal quotation marks

and citation omitted); *see, e.g., Al-Khazraji v. United States*, 519 F. App'x 711, 714 (2d Cir.

2013) (affirming dismissal for lack of subject-matter jurisdiction because United States was

worker's "special employer" under New Jersey's workers' compensation statute).

### B.    New York Workers' Compensation Law

Generally, under New York law, an employee accidentally injured on the job is restricted

from suing his or her employer or coemployee for the accidental injury.   *See Fung v. Japan

Airlines Co.*, 9 N.Y.3d 351, 357 (N.Y. 2007) ("[New York] Workers' Compensation Law §§ 11

and 29(6) restrict an employee from suing his or her employer or coemployee for an accidental

injury sustained in the course of employment.").   More specifically, under Sections 11 and 29(6)

of the New York Workers' Compensation Law, the liability of the employer shall be exclusive

and in place of any other liability.    *See* N.Y. Workers' Comp. Law § 11 ("The liability of an

employer . . . shall be exclusive and in place of any other liability whatsoever, to such employee .

. . entitled to recover damages . . . , at common law or otherwise, on account of such injury . . . or

liability arising therefrom . . . ."); N.Y. Workers' Comp. Law § 29(6) ("The right to

compensation or benefits under this chapter, shall be the exclusive remedy to an employee . . .

10

when such employee is injured . . . by the negligence or wrong of another in the same employ . . .

.").

Granted, "the workers' compensation remedy is generally not exclusive if the employee is injured by a third person . . . ." *Fung*, 9 N.Y.3d at 357 (citing Martin Minkowitz's *Practice Commentaries*).  However, the exclusivity of the workers' compensation remedy extends not only to a worker's "general employer" (that is, the one that is responsible "for payment of wages and for maintaining workers' compensation and other employee benefits") but also to a worker's "special employer" (that is, one to whom the worker "is transferred for a limited time of whatever duration . . [for] service").  *Thompson v. Grumman Aerospace Corp.*, 78 N.Y.2d 553, 557 (N.Y. 1991).   More simply stated, the workers' compensation remedy remains exclusive if the so-called "third person" is the worker's "special employer."   *Thompson*, 78 N.Y.2d at 557.

When deciding whether a "special employment" relationship exists, New York State courts consider many non-determinative factors, a "significant and weighty" one of which is "who controls and directs the manner, details and ultimate result of the employee's work" – in other words, who determines "all essential, locational and commonly recognizable components of the [employee's] work relationship." *Thompson*, 78 N.Y.2d at 558; *accord, Fung*, 9 N.Y.3d at 359.   Other "principal factors" include   "who is responsible for the payment of wages and the furnishing of equipment, who has the right to discharge the employee, and whether the work being performed was in furtherance of the special employer's or the general employer's business . . . ."   *Ugijanin v. 2 West 45th Street Joint Venture*, 43 A.D.3d 911 (N.Y. App. Div., 2d Dep't 2007); *see also Fung*, 9 N.Y.3d at 359 (citing *Ugijanin*).

Finally, it must be remembered that, although "a general employee of one employer may also be in the special employ of another" (i.e., "notwithstanding the general employer's

11

responsibility for payment of wages and for maintaining workers' compensation and other employee benefits"), "[g]eneral employment is presumed to continue," and "this presumption [may be] overcome [only] upon clear demonstration of surrender of control by the general employer and assumption of control by the special employer . . . ."   *Thompson*, 78 N.Y.2d at 557. In this sense, "a person's categorization as a special employee is usually a question of fact." *Id*. However, "the determination of special employment status may be made as a matter of law where the particular, undisputed critical facts compel that conclusion and present no triable issue of fact." *Id.* at 557-58.

## III.    ANALYSIS

### A.    Whether Plaintiff's Claims Against Defendants USPS and "Jane Doe" Should Be Dismissed

After carefully considering the matter, the Court answers the above-stated question in the affirmative for the reasons stated by Defendants.   *See, supra,* Parts I.B.1. and I.B.3. of this Decision and Order.   To those reasons, the Court adds only one point.

Generally, in this District, when a non-movant fails to oppose a legal argument asserted by a movant, the movant's burden with regard to that argument is lightened, such that, in order to succeed on that argument, the movant need only show that the argument possess facial merit, which has appropriately been characterized as a "modest" burden.   *See* N.D.N.Y. L.R. 7.1(a)(3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as this Rule requires shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause is shown."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting

cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL2473509, at \*2 & nn.2, 3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).   Here, the Court finds that Defendants have met that modest burden with regard to this argument.   In the alternative, even if the Court were to subject this argument to the more-rigorous scrutiny appropriate for a contested argument, the Court would agree with that argument for the reasons stated by Defendants.

For all of these reasons, Plaintiff's claims against Defendants USPS and "Jane Doe" are dismissed without prejudice for lack of subject-matter jurisdiction.

**B.    Whether Plaintiff's Claims Against Defendant USA Should Be Dismissed**

After carefully considering the matter, the Court answers the above-stated question in the affirmative for the reasons stated by Defendants.   *See, supra,* Parts I.B.1. and I.B.3. of this Decision and Order.   To those reasons, the Court adds the following analysis (which is intended to supplement, and not supplant, Defendants' reasons).

As stated above in Part II.B. of this Decision and Order, when deciding whether a "special employment" relationship exists, New York State courts consider a number of non-determinative factors.   With regard to the first such factor (i.e., "who controls and directs the manner, details and ultimate result of the employee's work" – in other words, who determines "all essential, locational and commonly recognizable components of the [employee's] work relationship"), the Court finds to be particularly significant Plaintiff's factual allegations that, for him to complete his work "transport[ing] mail to and from the Taft Road Facility," he was required to (1) park his truck at a dock, (2) obtain the numbered dock tag located outside the dock door, (3) bring the numbered dock tag to (and "check in with") a USPS employee designed "the Expeditor," (4) "wait[] for the Expeditor to open the appropriate overhead door corresponding to the numbered dock tag," and (5) receive "clearance [from the Expeditor] to

13

open the truck door." (Dkt. No. 1, at ¶¶ 11-16, 19-20 [Compl.].) Simply stated, according to Plaintiff's own Complaint, the USPS controlled literally every relevant component of his work at the moment of the accident (which is the relevant time period for purposes of the existence of "special employment" relationship).

This finding of transfer of control (albeit for a limited time period) is only further supported by the Court's consideration of the following: (1) the USPS' Standard Operating Procedure for Receive and Dispatch of Vehicles ("Dock SOP"), which imposes rather detailed requirements upon drivers when transporting mail to and from the Taft Road Facility; and (2) the terms of Highway Contract Route Contract 13032 ("HCR Contract"), which imposes additional requirements upon Salanger Trucking and its drivers. (Dkt. No. 8, Attach. 3, at 17-51; Dkt. No. 8, Attach. 7, at 1-68.) The Court finds that these documents may be considered as part of the factual allegations giving rise to Plaintiff's Complaint based on two alternative grounds: they were incorporated by reference in the Complaint, and they were integral to the Complaint.[2] In

---

[2]    *See L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. . . . Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . . However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document. It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") [internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc*., 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations

14

any event, even if these documents may not be so considered as part of Plaintiff's factual allegations, they may be considered as extrinsic evidence on the current motion to dismiss for lack of subject-matter jurisdiction.    *See, supra,* Part II.A. of this Decision and Order.

Granted, Plaintiff has adduced his own declaration swearing that he "was never under the direction . . . of any Postal workers at the Taft Road Facility or elsewhere," and that he "never took instruction from the Postal workers as far as [his] job duties were concerned."   (Dkt. No. 15, Attach. 3, at ¶ 8 [Waltos Decl.].)   Similarly, Plaintiff has adduced a declaration from the President of owner of Salanger Trucking, Richard Salanger, swearing that "[t]hroughout his work with Salanger, [Plaintiff] was under the direction and supervision of Salanger."   (Dkt. No. 15, Attach. 8, at ¶ 4 [Salanger Decl.].)[3]   The problem with these declarations, of course, is that they flatly contradict the factual allegations of Plaintiff's own Complaint, which plausibly suggest (as explained in the second paragraph of this part of the Decision and Order) that, at the time of the accident, he was under the rather-detailed direction and instruction of USPS's Expeditor, Jane Doe.   (Dkt. No. 1, at ¶¶ 11-16, 19-20 [Compl.].) Indeed, it is Jane Doe's alleged lack of due care during this exercise of control, alleges Plaintiff, that gives rise to his claim of negligence against Defendant USA.   (*Id*. at ¶¶ 20, 32-33.)

---

omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

[3]      The Court notes that, even if it were credited, this assertion would be of little materiality, because it is conspicuously missing the adjective "exclusive" before "direction."   *Cf. Virnig v. United States*, 22-CV-0775, 2023 WL 4305217, at *5 (N.D.N.Y. June 30, 2023) (D'Agostino, J.) (observing that "a general employee of one employer may also be in the special employ of another").

Case 5:24-cv-01287-GTS-MJK    Document 17    Filed 09/19/25    Page 16 of 21

Not surprisingly, a district court possesses the discretion to decline to credit a factual assertion contained in a plaintiff's affidavit when that factual assertion contradicts an allegation contained in the plaintiff's own prior complaint. *See Bellefonte Re Ins. Co. v. Argonaut Ins. Co.,* 757 F.2d 523, 528-29 (2d Cir. 1985) ("A party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding. Accordingly, the district court properly disregarded Universal's affidavits seeking to controvert its own pleading."); *accord, Official Comm. of the Unsecured Creditors of Color Tile. Inc. v. Coopers & Lybrand. LLP,* 322 F.3d 147, 167 (2d Cir.2003) ("[A] party cannot contradict its own pleading with affidavits[.]").[4]  Here, the Court finds that discretion to be properly exercised.

For these reasons, the Court finds that, based on the current record, no rational fact-finder could dispute that this first factor (which the New York State Court of Appeals has characterized as both "significant and weighty") weighs in favor of finding the existence of a "special employment" relationship between Plaintiff and USPS at the time of the accident.

With regard to the second such factor (i.e., "who is responsible for the payment of wages and the furnishing of equipment"), granted, Plaintiff has adduced his own declaration swearing

---

[4]      *See, e.g., Egleston v. The Valspar Corp.*, 15-CV-4130, 2015 WL 6508329, at *7 & n.6 (S.D.N.Y. Oct. 13, 2015) ("The Complaint contained an admission contradicted by plaintiff's later affidavit; when the initial admission is corroborated by uncontested direct evidence, the Court is under these circumstances entitled to credit the fact admitted."); *Rojas v. Roman Catholic Diocese of Rochester*, 783 F. Supp.2d 381, 407 (W.D.N.Y. 2010) ("[A] party cannot attempt to defeat a summary judgment motion by contradicting factual allegations in his complaint."); *Clarke v. JPMorgan Chase Bank, N.A.*, 08-CV-2400, 2010 WL 1379778, at *14 (S.D.N.Y. March 26, 2010) (rejecting a plaintiff's "last-ditch effort" to avoid summary judgment because "it is well established that a party cannot contradict its own pleading with affidavits."); *Southwick Clothing LLC v. GFT (USA) Corp.*, 99-CV-10452, 2004 WL 2914093 at *6 (S.D.N.Y. Dec. 15, 2004) ("Those factual allegations [in plaintiffs' amended complaint] are judicial admissions that bind plaintiffs throughout the course of the litigation. Plaintiffs cannot survive a summary judgment motion by contradicting their own pleadings in an effort to raise a genuine issue of fact.").

that "Salanger Trucking set my wage rate and paid my wages."    (Dkt. No. 15, Attach. 3, at ¶ 7

[Waltos Decl.].)    Similarly, Plaintiff has adduced a declaration from Richard Salanger, swearing

that "[Plaintiff's] pay rate was set by Salanger and his wage was paid by Salanger."    (Dkt. No.

15, Attach. 8, at ¶ 3 [Salanger Decl.].)

    However, based on the factual allegations and evidence adduced, the Court finds that

Plaintiff's only job duty was to transport mail to and from USPS facilities, pursuant to

Salanager's contract with USPS.    (Dkt. No. 15, Attach. 3, at ¶ 9 [Waltos Decl., stating, "At the

beginning of my work shift, I would pick up the truck assigned to me from Salanger Trucking's

lot and I would return it to Salanger Trucking's lot at the end of my shift.    Salanger Trucking

assigned me to a specific route.    Most of my time was spent driving from location to location to

transport mail."]; Dkt. No. 1, at ¶ 11 [Compl., alleging, "Plaintiff was employed by Salanger

Trucking, which contracts to transport mail to and from the Taft Road Facility. . . ."]; Dkt. No.

15, Attach. 8, at ¶ 3 [Salanger Decl., stating, "Salanger provides services to the United States

Post Office through a written contract."]; Dkt. No. 8, Attach. 6, at ¶ 4 [Hite Decl., stating, "The

terms of HCR 13032 provided that Salanger would provide mail delivery services for a variety of

Postal facilities, which included the Syracuse facility, located at 5640 Taft Road, in Syracuse,

New York."]; *cf*. Dkt. No. 8, Attach. 3, at ¶ 1 [Burleigh Decl., sating, "I was a truck driver [for

Salanger Trucking] working *exclusively* in connection with picking up and transporting mail to

the Taft Road Facility of the United States Postal Service."] [emphasis added].)[5]

    As a result, the Court finds that all of Plaintiff's wages effectively came from the USPS.

(*Id*.)    *See Mitchell v. Eaton's Trucking Serv., Inc*., 85 N.Y.S.3d 254, 256-57 (N.Y. App. Div., 3d

---

[5]        *See also* Salanger Trucking, LLC, "About Us" (stating, "Our only business is as a
supplier to the USPS . . . "), https://salangertrucking.com/about-us (last accessed September 9,
2025).

Dep't 2018) (finding that claimant was "special employee" of Quality Carrier's, Inc., where "the evidence established that Eaton [Trucking Service, Inc.] and Quality had an arrangement whereby Eaton's drivers, including claimant, hauled products *exclusively* for Quality's customers") (emphasis added); *Cameli v. Pace Univ.*, 516 N.Y.S.2d 228, 229 (N.Y. App. Div., 2d Dep't 1987) ("[A]lthough National Cleaning Contractors was responsible for supplying paychecks and maintaining insurance, all of the principal concomitants of an employee-employer relationship between Mr. Cameli and Pace University are extant. Mr. Cameli had been permanently assigned to work *exclusively* at Pace University on a full-time basis for the previous year and a half . . . .") (emphasis added); *Ott v. Steingart Woodcrafters, Inc.*, 959 N.Y.S.2d 91, at *3 (N.Y. Sup. Ct., Kings Cnty. 2012) ("Plaintiff was *exclusively* assigned to a Shiseido counter and could not be reassigned to work at any other cosmetics counter in Macy's. Shiseido reimbursed Macy's for any salary Macy's paid to plaintiff.") (emphasis added).

Moreover, the Court finds to be particularly significant the fact that almost all of the relevant equipment to be used or relied on by Plaintiff during the performance of his job (including but not limited to the docks, numbered dock tags, overhead doors, and mechanism for opening and closing those doors) were owned and controlled by USPS.   The only piece of relevant equipment not owned by USPS appears to have been Plaintiff's truck; however, the movement of Plaintiff's truck was strictly controlled by USPS when on USPS property, pursuant to Dock SOP and HCR Contract.[6]

For these reasons, the Court finds that, based on the current record, no rational fact-finder could dispute that, if this second factor weighs in favor of any finding, it weighs in favor of

---

[6]    Also strictly controlled by USPS are the requirements and specifications of the vehicles used by Salanger.   (*See, e.g.,* Dkt. No. 8, Attach. 8, at 16-24 [Section B.2. of HCR Contract 13032, listing "Vehicle Requirements and Specifications"].)

finding the existence of a "special employment" relationship between Plaintiff and USPS at the time of the accident.

With regard to the third such factor (i.e., "who has the right to discharge the employee"), granted, Plaintiff relies heavily on the fact that he has adduced a declaration from Richard Salanger, swearing that "I retained the authority to . . . terminate Salanger drivers, including Mr. Waltos." (Dkt. No. 15, Attach. 8, at ¶ 4 [Salanger Decl.].) However, the record contains uncontroverted evidence that USPS possessed the power to revoke the "non-sensitive clearance" that Plaintiff needed to perform his job. (Dkt. No. 8, Attach. 7, at 28, 36 [HCR Contract, stating, in pertinent part, "The results of the Postal Service investigation will determine if the contract employee is granted a non-sensitive clearance. Non-sensitive clearances can be denied or revoked. . . . . The contract resulting from this solicitation will require the contractor or its employees . . . to have access to occupied postal facilities, and/or to postal information and resources, including postal computer systems. *Clearance will be required before that access will be permitted*."]) (emphasis added). Similarly, the record contains uncontroverted evidence that USPS possessed the power to terminate Plaintiff's driving privileges if he failed to abide by the USPS's rules. (Dkt. No. 8, Attach. 5, at 2 ["Syracuse P&DC Driver Reminders," stating, in pertinent part, "Failure to abide by these rules could result in your driving privileges being terminated"].) *See Mitchell*, 85 N.Y.S.3d at 256 (finding that claimant was "special employee" of Quality Carrier's, Inc., where "Quality retained the authority to 'disqualify' [Eaton Trucking Service, Inc.] drivers based upon their driving record"). Moreover, as indicated above, Salanger Trucking's only business is as a contractor for USPS. Furthermore, conspicuously missing from Richard Salanger's declaration is a statement that Salanger Trucking would have continued to employ Plaintiff if his security clearance had been revoked and/or driving privileges terminated

19

by USPS (e.g., for refusing to comply with USPS's SOP when docking his truck).   (*See generally* Dkt. No. 15, Attach. 8 [Salanger Decl.].)

For these reasons, the Court finds that, based on the current record, no rational fact-finder could dispute that, if this third factor weighs in favor of any finding, it weighs in favor of finding the existence of a "special employment" relationship between Plaintiff and USPS at the time of the accident.

Finally, with regard to the fourth such factor (i.e., "whether the work being performed was in furtherance of the special employer's or the general employer's business"), the Court finds that, for the reasons stated earlier, Plaintiff's general employer was not in any business that was outside of the business of USPS; as a result, the work performed by Plaintiff at the time of the accident must have been in furtherance of the business of USPS (his "special employer"). *See Mitchell*, 85 N.Y.S.3d at 256 (finding that claimant was "special employee" of Quality Carrier's, Inc., where "the evidence established that Eaton [Trucking Service, Inc.] and Quality had an arrangement whereby Eaton's drivers, including claimant, hauled products exclusively for Quality's customers and did so in furtherance of Quality's business . . ."); *Ott,* 959 N.Y.S.2d 91, at *3 ("Plaintiff was *exclusively* assigned to a Shiseido counter and could not be reassigned to work at any other cosmetics counter in Macy's.") (emphasis added); *cf. Cameli*, 516 N.Y.S.2d at 229 ("Mr. Cameli had been permanently assigned to work *exclusively* at Pace University on a full-time basis for the previous year and a half . . . .") (emphasis added).   For these reasons, the Court finds that, based on the current record, no rational fact-finder could dispute that this fourth factor weighs in favor of finding the existence of a "special employment" relationship between Plaintiff and USPS at the time of the accident.

Carefully balancing these four factors, the Court finds that they weigh decidedly in favor

of finding the existence of a "special employment" relationship between Plaintiff and USPS at the time of the accident.   As a result, Plaintiff's claim against Defendant United States is dismissed without prejudice for lack of subject-matter jurisdiction.

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion to dismiss Plaintiff's Complaint for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 21(b)(1) (Dkt. No. 8) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED** without prejudice.[7]

Dated: September 19, 2025
        Syracuse, New York

Glenn T. Suddaby
U.S. District Judge

---

[7]    *See Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 126 (2d Cir. 2022) ("A dismissal for lack of jurisdiction must be without prejudice rather than with prejudice."); *Green v. Dep't of Educ. of City of N.Y.*, 16 F.4th 1070, 1074 (2d Cir. 2021) ("When subject matter jurisdiction is lacking, the district court lacks the power to adjudicate the merits of the case, and accordingly Article III deprives federal courts of the power to dismiss the case with prejudice.") (internal quotation marks omitted); *Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 121 (2d Cir. 2017) ("One other wrinkle: when a case is dismissed for lack of federal subject matter jurisdiction, Article III deprives federal courts of the power to dismiss [the] case with prejudice.").