UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

THOMAS J. WALTOS,

                    Plaintiff,

v.                                                          5:24-CV-1287
                                                            (GTS/MJK)
UNITED STATES OF AMERICA;
UNITED STATES POSTAL SERVICE; and
JANE DOE, in her official capacity as a
United States Postal Service Employee,

                    Defendants.
_____

APPEARANCES:                                OF COUNSEL:

COSTELLO, COONEY & FEARON, PLLC             DONALD S. DiBENEDETTO, ESQ.
    Counsel for Plaintiff                   STACEY A. MARRIS, ESQ.
211 W. Jefferson Street, Suite 1
Syracuse, NY 13202

UNITED STATES ATTORNEY FOR THE             EMER M. STACK, ESQ.
NORTHERN DISTRICT OF NEW YORK              Assistant United States Attorney
    Counsel for Defendants
100 S Clinton Street, Suite 9000
Syracuse, NY 13261

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

Currently before the Court, in this personal injury action filed by Thomas J. Waltos

("Plaintiff") against the United States of America ("USA"), United States Postal Service

("USPS"), and employee Jane Doe in her official capacity (collectively "Defendants"), is

Plaintiff's motion for reconsideration under Fed. R. Civ. P. 59(e), 60(b)(1) and 60(b)(6) of the

Court's Decision and Order of September 19, 2025, granting Defendants' motion to dismiss

Plaintiff's Complaint for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 21(b)(1). (Dkt. Nos. 8, 17, 23.)   For the reasons set forth below, Plaintiff's motion is granted in part (i.e., with regard to the dismissal of his claims against Defendant USA) and otherwise denied (i.e., with regard to the dismissal of his claims against Defendants USPS and Jane Doe).   To the extent Defendants' motion to dismiss has now been denied, it is denied only without prejudice to renewal based on a more complete record.

## I.    RELEVANT BACKGROUND

### A.    Relevant Procedural History

Generally, in his Complaint, Plaintiff asserts claims under the Federal Tort Claims Act ("FTCA") against Defendants based on injuries he sustained, as a private truck driver, from a fall from a loading dock in USPS's Taft Road Facility on December 31, 2021.   (Dkt. No. 1.) Rather than simply opening a loading dock door upon Plaintiff's arrival, the USPS tasked him with participating in that process.   More particularly, Plaintiff alleges that, for him to complete his work transporting mail to and from the facility, he was required by the USPS to do the following (after parking his truck at a loading dock): (1) obtain the numbered dock tag located outside the dock door; (2) bring the numbered dock tag to a USPS employee designated "the Expeditor"; (3) "check in with" the Expeditor; (4) "wait[] for the Expeditor to open the appropriate overhead door corresponding to the numbered dock tag"; and (5) receive "clearance [from the Expeditor] to open the truck door."   (*Id*. at ¶¶ 11-16, 19-20.)   After the Expeditor allegedly directed Plaintiff to and opened the wrong dock door, Plaintiff attempted to open the door of a departing truck and fell.   (*Id*. at ¶¶ 20-21.)   For a more-detailed summary of the claims and allegations of Plaintiff's Complaint, the reader is respectfully referred to Part I.A. of the Court's Decision and Order of September 19, 2025.   (Dkt. No. 17, at 2-3.)

Generally, in that underlying Decision and Order, the Court granted Defendants' motion to dismiss Plaintiff's Complaint for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 21(b)(1).  (Dkt. No. 17.)   More specifically, the Court (1) dismissed Plaintiff's claims against Defendants USPS and "Jane Doe" because they are not proper Defendants under the FTCA (a fact that Plaintiff never contested in his opposition memorandum of law), and (2) dismissed his claims against Defendant USA because (a) under New York Workers' Compensation Law, the exclusivity of a worker's compensation remedy (for an injury on the job) extends not only to the worker's "general employer" but also to the worker's "special employer," and (b) here, based the Complaint's own factual allegations and incorporated and integral documents, a clear showing has been made that the USPS was Plaintiff's "special employer" at the time of his injury (given that the USPS controlled literally every relevant component of his work at the time of the accident).  (*Id.*)

On October 16, 2025, Plaintiff filed a motion for reconsideration.  (Dkt. No. 23.)[1]  On December 19, 2025, Defendants opposed that motion.  (Dkt. No. 26.)   On January 9, 2026, Plaintiff replied to that opposition.  (Dkt. No. 30.)   Oral argument was neither requested nor held.

**B.    Summary of Parties' Arguments**

**1.    Plaintiff's Memorandum of Law**

Generally, in his memorandum of law, Plaintiff requests that the Court vacate its Decision and Order of September 19, 2025, "in the entirety," but asserts arguments regarding

---

[1]    The Court notes that, on October 15, 2025, Plaintiff filed a Notice of Appeal.  (Dkt. No. 19.)   However, the Second Circuit held that appeal in abeyance pending a decision by the undersigned on Plaintiff's motion for reconsideration.  (Dkt. No. 28.)

only Plaintiff's claims against Defendant USA.   (*Compare* Dkt. No. 23, Attach. 2, at 3, *with*

Dkt. No. 23, Attach. 2, at 5-17.)[2]   More specifically, Plaintiff's memorandum of law asserts 13

arguments.   (Dkt. No. 23, Attach. 2.)[3]

First, Plaintiff argues, a threshold requirement for the necessary transfer of control of his

work from Salanger Trucking to USPS (sufficient to create a special employment relationship

with USPS) is the fact that he was aware of and consented to that special employment

relationship.   (*Id*. at 5.)   More specifically, Plaintiff argues, here, there is no evidence that he

agreed to work for anyone other than Salanger Trucking, because "merely follow[ing] the USPS

safety instructions" does not constitute such evidence.   (*Id*. at 15-16.)

Second, Plaintiff argues, many non-determinative factors are considered by a court when

determining whether a special employment relationship exists, the most significant and weighty

of which is whether the general employer surrendered and transferred "complete and exclusive

control" to the special employer.   (*Id*. at 5-6.)   Plaintiff further argues that, in weighing this key

factor of control, the Court misinterpreted the intent of the allegations of the Complaint and

(relying on distinguishable cases) improperly found those allegations to be inconsistent with, or

contradicted by, the Declarations of Plaintiff and Richard Salanger.   (*Id*. at 6-7.)

Third, Plaintiff argues, the Court also misinterpreted the impact of the Dock SOP, which

distinguishes between postal "employee[s]" and "driver[s]" (such as Plaintiff), and reflects that

---

[2]     Page citations in this Decision and Order refer to the screen numbers on the Court's Case
Management / Electronic Case Filing ("CM/ECF") System, not to the page numbers stated on
the documents contained therein.

[3]     Although Plaintiff's memorandum of law asserts 13 pages of arguments in a topical
fashion (e.g., without any subheadings and usually without any transitional or adverbial phrases),
the Court has attempted to liberally construe them.

drivers are not permitted to operate the dock doors only because they are not trained by the USPS to do so.   (*Id*. at 7.)

Fourth, Plaintiff argues, indeed, if he had been under the direct supervision and control of the USPS, or had *actually* been a special employee of the USPS, the USPS would have (a) communicated the procedures set forth in the Dock SOP directly to Plaintiff (instead of relying on highway contractors such as Salanger Trucking to do so), (b) trained Plaintiff to operate the dock doors, and (c) afforded him a supervisor.   (*Id*.)

Fifth, Plaintiff argues, furthermore, although the procedures relating to the opening of loading dock doors take mere minutes to follow and do not have any bearing on Plaintiff's activities throughout his workday (the vast majority of which consisted of driving Salanger Trucking's truck, away from the USPS's property), the Court improperly found that the moment of the accident is the relevant time period for purposes of determining the existence of a special employment relationship (a finding that has no support in the law).   (*Id*. at 7-8.)

Sixth, Plaintiff argues, in fact, it is not uncommon for a large facility to have requirements that drivers check in on arrival, pull up to a loading dock to which they are directed, and follow the instructions of the plant personnel as to how and where to unload their trucks, and a finding that complying with such requirements renders the drivers a special employee of the facility would lead to absurd results.   (*Id*. at 8.)

Seventh, Plaintiff argues, it is noteworthy that, in their underlying reply memorandum of law, Defendants did not submit sworn statements from anyone familiar with Plaintiff or his accident or the procedures at the Taft Road postal facility (such as the Expeditor, Defendant Jane Doe), which supports a finding that the Declarations of Plaintiff and Richard Salanger are irrefutable.   (*Id*.)

5

Eighth, Plaintiff argues, if, while out on the road, a third party had been injured through the alleged negligence of a Salanger Trucking driver, then Defendant USA would have (and consistently has) taken the contradictory position that it has no liability, because the driver is an independent contractor and not under the control of the USPS.   (*Id*. at 8-9 [citing a Tenth Circuit case and a Northern District of California case involving injuries to third parties while out on the road.)

Ninth, Plaintiff argues, the Court improperly overlooked *Couch v. United States*, 694 F.3d 852 (7th Cir. 2012), which (except for the fact that it addressed Illinois state law) is strikingly similar to the current case in that (a) it arose from the injury to a private truck driver by a forklift in a postal facility, (b) the private truck driver was required to display a badge reading "non postal service contractor employee," just as Plaintiff was required to do here, (c) the driver was required to be in communication with their company supervisor throughout the day, just as Plaintiff was required here to have "onboard communication systems" in his truck, and (d) the case involved a HCR Contract that did not supply truck drivers to the Post Office but rather supplied a service, just as the case does here (a fact reflected in the "Detailed Report" of the accident).   (*Id*. at 9-13.)

Tenth, Plaintiff argues, the Court improperly rejected (and indeed failed to even address) Plaintiff's reliance on *Kwitek v. United States*, 694 F.Supp.2d 219 (W.D.N.Y. 2010), which involved an injury to a driver/employee of a contractor at a postal facility.   (*Id*. at 13.)

Eleventh, Plaintiff argues, the Court should consider for the first time *Fowler v. United States*, 08-CV-2785, 2011 WL 6753990 (N.D. Ill. Dec. 22, 2011), which also arose from an injury to private truck driver while making a delivery to a post office.   (*Id*. at 13-14.)

Twelfth, Plaintiff argues, the Court improperly relied on *Virnig v. United States*, 22-CV-

6

0775, 2023 WL 4305217 (N.D.N.Y. Jun. 30, 2023), which is distinguishable for several reasons (including the fact that the defendant's motion was supported by a declaration, unlike in the current case). (*Id*. at 14-15.)

Thirteen, and finally, Plaintiff argues, other non-determinative factors (governing a determination of whether a special employment relationship exists) include who is responsible for the payment of wages and the furnishing of equipment, who has the right to discharge the employee, and whether the work being performed was in furtherance of the special employer's or general employer's business. (*Id*. at 5-6.) Plaintiff further argues that the weight of these other factors does not clearly establish a special employment relationship between Plaintiff and the USPS, because (a) contrary to the Court's finding that the USPS effectively paid Plaintiff's wages, only Salanger Trucking paid those wages after being paid a fixed contract amount by the USPS (as was the case in *Couch*), (b) contrary to the Court's finding that the USPS effectively had the right to discharge Plaintiff (by revoking his "non-sensitive clearance" to access Defendant's facility and/or terminating his "driving privileges"), it was Salanger Trucking that had the right to discharge Plaintiff, whom it could have reassigned to non-driving duties (as was also the case in *Couch*), and (c) contrary to the Court's finding that Plaintiff's work was effectively being performed in furtherance of the USPS (because it was Plaintiff's sole client), so long as the workman retains the right to determine the details of the performance of the work (even if he is subject in specified matters to the will and directions of the person for whom the work is to be performed), he is an independent contractor rather than a servant, and his work remains the "business" of the workman, even though it is performed in furtherance of the "business" of another person (as explained in *Irvin v. Klein*, 271 N.Y. 477, 485 [N.Y. 1936]).

7

(*Id*. at 16-17.)[4]

### 2.     Defendants' Opposition Memorandum of Law

Generally, in their opposition memorandum of law, Defendants assert three arguments. (Dkt. No. 26.)

First, Defendants argue, Plaintiff is not entitled to reconsideration based on legal arguments that he neglected to raise and that in any event would not have altered the outcome. (*Id*. at 12-21.)   More specifically, Defendants argue, Plaintiff essentially bases his request on two legal grounds: (1) the Seventh Circuit's decision in *Couch v. United States*, 694 F.3d 852 (7th Cir. 2012); and (2) the point of law that consent is required for a special employment relationship to exist.   (*Id*.)

With regard to the first ground, Defendants argue, Plaintiff never sufficiently raised that ground in his underlying opposition memorandum of law but only cited *Couch* in a footnote and argued in passing that it "support[ed] Mr. Waltos's action."   (*Id*. at 13-15.)   In any event, Defendants argue, Plaintiff's *Couch*-based arguments would not have altered the outcome for the

---

[4]     The Court notes that, in addition to asserting the above-stated 13 arguments, Plaintiff has attempted to incorporate by reference into his memorandum of law his underlying opposition to Defendants' motion to dismiss.   (Dkt. No. 23, Attach. 2, at 4.)   Of course, such incorporation is not allowed for each of two reasons: (1) it violates the District's rule on page limitations, and (2) it risks confusing both the opponent and the Court. *See Topliff v. Wal-Mart Stores East LP*, 04-CV-0297, 2007 WL 911891, at *9 n. 65 (N.D.N.Y. Mar. 22, 2007) (Lowe, M.J.) ("A party may not articulate a legal argument simply by 'incorporating by reference' the argument presented in another document. Such a practice violates the Local Rule on page limitations."); *Nissan Motor Acceptance Corp. v. Dealmaker Nissan, LLC*, 09–CV–0196, 2012 WL 2522651, at *2 (N.D.N.Y. June 27, 2012) (Suddaby, J.) ("Setting aside the risk that such reference could cause the referring document to violate the District's rule on page limitations (once it is incorporated into the referred document), such a practice also risks causing the opposing party to inadvertently overlook the attempted incorporation, and risks confusing the Court as to which "incorporated" arguments are actually being relied upon.").

following reasons: (a) as an out-of-circuit case, *Couch* does not represent a controlling decision that warrants reconsideration (which is also true of *Fowler v. United States*, 08-CV-2785, 2011 WL 6753990 [N.D. Ill. Dec. 22, 2011]); and (b) in any event, *Couch* is inapposite, because the United States in *Couch* did not argue that the common-law "control" test applied (as the United States does here), and alternatively because the Seventh Circuit's analysis hinged on a three-factor statutory test for special or borrowed employment under Illinois law that does not align with the test for special employment under New York law (in that, for example, the former test's "furnishing employees" factor does in exist in the latter test).   (*Id*. at 16-20.)

With regard to the second ground, Defendants argue, Plaintiff never raised the ground in his underlying opposition memorandum of law.   (*Id*. at 17.)   In any event, Defendants argue, the ground would not have altered the outcome, because, even in those cases that hold that an employee may be treated as a special employee only if he knew of and approved of the arrangement with the new employer, courts acknowledge that such knowledge and approval may be inferred where the servant, continuing in the service, takes his orders from someone other than the hirer or the hirer's representative (as Plaintiff did here, namely from the Postal Expeditor).   (*Id*. at 17-18.)

Second, Defendants argue, Plaintiff otherwise fails to identify a "mistake," "clear error," or other overlooked matter warranting relief under either Fed. R. Civ. P. 59(e) or Fed. R. Civ. P. 60(b)(1). (*Id*. at 21-27.)   More specifically, Defendants argue, the Court appropriately considered the record to find a special employment relationship, because (a) the Court did not misinterpret the plain meaning of factual allegations of his Complaint (particular Paragraphs 11-16, and 19-20), the intent of which is immaterial, (b) the Court properly rejected as unpersuasive Plaintiff's argument that both the Dock SOP and HCR Contract use language that distinguishes

between the trucking company's drivers and Postal employees (given the requirements imposed by those documents), and (c) the Court properly declined to credit the Declarations of Plaintiff and Richard Salanger to the extent they were flatly inconsistent with the factual allegations of Plaintiff's own Complaint.   (*Id*. at 22-25.)

Moreover, Defendants argue, the Court did not overlook *Kwitek v. United States Postal Service*, 694 F. Supp.2d 219 (W.D.N.Y. 2010), because the Court twice acknowledged the parties' competing arguments regarding *Kwitek*, before expressly adopting all of Defendants' arguments in support of dismissal (which included the arguments that *Kwitek* is distinguishable because it did not address New York's "special employer" doctrine and involved only the FTCA's independent-contractor and discretionary-function exceptions, which are not at issue here).   (*Id*. at 25-26.)

In addition, Defendants argue, the Court's reliance on *Virnig v. United States*, 22-CV-0775, 2023 WL 4305217, at *5 (N.D.N.Y. June 30, 2023) (D'Agostino, J.), does not warrant reconsideration, because (a) that reliance was insignificant (occurring only in a footnote for the undisputed point of law that "a general employee of one employer may also be in the special employ of another"), and (b) in any event, Plaintiff's attempt to distinguish *Virnig* is unpersuasive given that the purported distinction he relies on (i.e., the presence of a supporting declaration in *Virnig* and the absence of one in this case) is immaterial to this case (which, unlike *Virnig*, did not address a motion alternatively cast as one for summary judgment).   (*Id*. at 26-27.)

Third, and finally, Defendants argue, Plaintiff fails to identify "extraordinary circumstances" warranting relief under case law applying Fed. R. Civ. P. 60(b)(6) for the following reasons: (a) as an initial matter, he does not state what extraordinary circumstances

10

exist that would warrant such relief; and (b) in any event, to the extent that he argues that it would be a "manifest injustice" to limit his recovery "where it has been proven" that he was "disabled by this accident" and suffers from his injuries, that argument is conclusory, unsupported, and insufficient to rise to the level of extraordinary circumstances (especially given that Plaintiff has already benefitted from the bargain that the law of workers' compensation reflects by receiving moderate but certain workers' compensation for his injuries).  (*Id*. at 27.)

### 3.    Plaintiff's Reply Memorandum of Law

Generally, in his reply memorandum of law, Plaintiff asserts three arguments.  (Dkt. No. 30.)  First, Plaintiff argues, Defendants' argument that he did not raise certain arguments is inapplicable and patently false.  (*Id*. at 3-8.)  More specifically, Plaintiff argues that the Federal Rules of Civil Procedure encourage reconsideration in order to empower district courts to correct their own errors and mistakes toward the end of preventing avoidable delays caused by unnecessary appeals; and here the Court is empowered it to consider newly presented non-controlling cases (most notably *Couch* from the Seventh Circuit) in order to correct its clear misapprehension of New York's special employment test.  (*Id*. at 3-6.)  In addition, Plaintiff argues, the Court should not disregard as undeveloped arguments presented by him in footnotes (such as arguments regarding *Couch*), particularly (a) *Couch*'s analysis of the three-pronged statutory test for special or borrowed employment under Illinois law is instructive here, and (b) in *Couch*, both parties agreed that the alternative common-law test under Illinois law (which was analogous to the test under New York law) did not apply under the circumstances.  (*Id*. at 6-7.)  Furthermore, Plaintiff argues, he did in fact raise the issue of consent, because, on pages 8 and 9 of his underlying opposition memorandum of law, he cited two cases followed by blurbs that

expressly mentioned the word "consent."   (*Id*. at 8.)[5]

Second, Plaintiff argues, the Court's consideration (or lack of consideration) of the facts of this matter constitutes a clear error or results in manifest injustice.   (*Id*. at 8-11.)   More specifically, Plaintiff argues, the Court erred in interpreting the law as providing that the time period required for a special employment relationship is limited to the split second in which an accident occurs; to the contrary, the shortest such time period set forth in the case law is one day. (*Id*. at 8.)   In addition, Plaintiff argues, each of the five cases on which the Court relied for its decision to disregard the Declarations of Plaintiff and Richard Salanger is distinguishable from the current case, which involves no contradiction between those declarations and Complaint. (*Id*. at 9-10.)   Furthermore, Plaintiff argues, the Court's failure to specifically discuss *Kwitek* (which is a persuasive case from a neighboring federal district court which is nearly identical factually to the current case) demonstrates the Court's misapplication of the controlling legal standard.   (*Id*. at 10-11.)

Third, and finally, Plaintiff argues, his motion should be granted in order to prevent manifest injustice and/or because extraordinary circumstances warrant the granting of his motion.   (*Id*. at 11-12.)   More specifically, Plaintiff argues, he would experience an extraordinary hardship if his recovery for his pain and suffering were limited to the modest workers' compensation benefits that he has already received.   (*Id*. at 11.)   In addition, Plaintiff argues, Defendants' argument that his claims that he was disabled by this accident "are

---

[5]     Although Plaintiff states that these two cases were *Franco v. Kaled Mgmt. Corp*., 74 A.D.3d 1142 (N.Y. App. Div., 2d Dep't 2010), and *Bernier v. Gabriel Contr.*, 6 A.D.3d 369 (N.Y. App. Div., 2d Dep't 2004), the Court notes that the first of these two cases was not *Franco* but was *George v. IDC Sales Corp*., 76 A.D.3d 950 (N.Y. App. Div., 2d Dep't 2010).   (Dkt. No. 15, Attach. 9, at 10-11.)

conclusory, unsupported, and insufficient to rise to the level of extraordinary circumstances" is "concerning," because "Defendants submitted to the Court [Plaintiff's] medical records demonstrating his life[-]altering injuries."  (*Id.* at 11-12.)

## II.    GOVERNING LEGAL STANDARDS

### A.    Legal Standard Governing a Motion Under Fed. R. Civ. P. 59(e)

A court may grant a motion under Fed. R. Civ. P. 59(e) "only when the [movant] identifies [1] an intervening change of controlling law, [2] the availability of new evidence, or [3] the need to correct a clear error or prevent manifest injustice.'"  *Metzler Inv. Gmbh v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 142 (2d Cir. 2020) (internal quotation marks and citations omitted).   This standard is "strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 [2d Cir. 1995]).   "It is well-settled that Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple."  *Analytical Surveys, Inc.*, 684 F.3d at 52 (internal quotation and citations omitted).

### B.    Legal Standards Governing a Motion Under Fed. R. Civ. 60(b)(1) and (6)

Rule 60(b) permits "a party to seek relief from a final judgment, and request reopening of his case, under a limited set of circumstances . . . ."  *Gonzalez v. Crosby*, 545 U.S. 524, 528 (2005).

As applicable here, a party may seek relief under Fed. R. Civ. P. 60(b)(1) based on "mistake, inadvertence, surprise, or excusable neglect."  Fed. R. Civ. P. 60(b)(1).   Granted, "a 'mistake' under Rule 60(b)(1) includes a judge's errors of law."  *Kemp v. United States*, 596

U.S. 528, 533-34 (2022). However, "[m]ere dissatisfaction in hindsight with choices deliberately made by counsel is not grounds for finding . . . [a] mistake . . . necessary to justify Rule 60(b)(1) relief." *Nemaizer v. Baker*, 793 F.2d 58, 62 (2d Cir. 1986).

Under Fed. R. Civ. P. 60(b)(6), a party may seek relief based on "any *other* reason that justifies relief." Fed. R. Civ. P. 60(b)(6) (emphasis added). As indicated by the word "other," Fed. R. Civ. P. 60(b)(6) is available "only when Rule 60(b)(1) through (b)(5) are inapplicable." *Kemp*, 596 U.S. at 533. Furthermore, because "a Rule 60(b) motion 'threaten[s] an already final judgment with successive litigation'" after it is entered, *BLOM Bank SAL v. Honickman*, 605 U.S. 204, 215 (2025) (alterations in original), "[r]elief under Rule 60(b)(6) requires extraordinary circumstances," *BLOM*, 605 U.S. at 210. "'This very strict interpretation of Rule 60(b) is essential if the finality of judgments is to be preserved.'" *Id.* at 213 (quoting *Gonzalez v. Crosby*, 545 U.S. 524, 535 [2005]).[6]

---

[6]      Granted, a line of cases exist in the Second Circuit indicating that "extreme undue hardship" may constitute an alternative ground for relief under Fed. R. Civ. P. 60(b)(6). *See, e.g., Matter of Emergency Beacon Corp.*, 666 F.2d 754, 759 (2d Cir. 1981) ("This portion of Rule 60(b) is properly invoked when there are extraordinary circumstances, . . . *or* where the judgment may work an extreme and undue hardship . . . .") (emphasis added). However, the authority relied on by those cases does not appear to clearly indicate such a disjunctive relationship. *See United States v. Karahalias*, 205 F.2d 331, 333 (2d Cir. 1953) (stating that "we think that [Rule 60(b)(6)] was meant to provide for situations of extreme hardship . . ." and not mentioning "extraordinary circumstances"). Furthermore, recently the Supreme Court repeatedly characterized extraordinary circumstances as the "only" requirement of relief under Fed. R. Civ. P. 60(b)(6) (not merely an alternative requirement of relief). *BLOM Bank SAL v. Honickman*, 605 U.S. 204, 206, 212, 215 (2025). As a result, the undersigned liberally construes extreme undue hardship as constituting a possible factor in determining the existence of extraordinary circumstances. *Cf. Buck v. Davis*, 580 U.S. 100, 123 (2017) (quoting *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 864 [1988]) ("In determining whether extraordinary circumstances are present, a court may consider a wide range of factors . . . [including] . . . 'the risk of injustice to the parties' and 'the risk of undermining the public's confidence in the judicial process.'"). In any event, such extreme and undue hardship must be caused by the judgment itself, as opposed to being caused by the alleged tort at issue. *See Pastor v. Partnership for Children's Rights*, 856 F. App'x 343, 345 (2d Cir. 2021) ("Pastor failed

14

Finally, "Rule 60(b)(1) and Rule 60(b)(6) are 'mutually exclusive,' such 'that any conduct which generally falls under the former cannot stand as a ground for relief under the latter.'"  *Mandala v. NTT Data, Inc*., 88 F.4th 353, 359 (2d Cir. 2023) (quoting *Stevens v. Miller*, 676 F.3d 62, 67 [2d Cir. 2012] [internal quotation marks omitted]).   As a result, when "'a party's Rule 60(b) motion is premised on grounds fairly classified as mistake . . . , relief under Rule 60(b)(6) is foreclosed.'"  *Mandala*, 88 F.4th at 359 (quoting *Stevens*, 676 F.3d at 67).

## III.    ANALYSIS

### A.    Plaintiff's Argument Regarding Requirement of Consent

The Court begins its analysis with the first argument set forth in Plaintiff's opening memorandum of law (regarding consent).   Although the Court agrees with Defendants that Plaintiff did not conspicuously raise the issue of lack of consent in his underlying opposition memorandum of law, the Court finds that he adequately raised it there by invoking the legal standard governing the determination of a special employer relationship under New York law: the Court finds that to rule otherwise would be to abandon its fundamental duty to correctly ascertain the governing legal standard.

Turning to an analysis of the issue of consent, the Court begins by acknowledging that "[t]he new [special employment] relation[ship] cannot be thrust upon the servant without knowledge or consent."  *Murray v. Union Ry. Co. of New York City*, 229 N.Y. 110, 113 (N.Y. 1920), *accord, Doran v. New York City Interborough Ry. Co.*, 239 N.Y. 448, 451 (N.Y. 1925);

---

to identify any 'extraordinary circumstances justifying relief' or any 'extreme and undue hardship' caused by the judgment itself, as opposed to a hardship caused by the alleged discrimination and retaliation.").

*see also Thompson v. Grumman Aerospace Corp.*, 78 N.Y.2d 553, 558 (N.Y. 1991) ("[T]hus, [plaintiff] was aware of and consented to his special employee status . . . .") (citations omitted); *cf. Ramsey v. New York Cent. R. Co.*, 269 N.Y. 219, 225 (N.Y. 1935) ("It would be strange indeed if the respondent, . . . by loaning its servant to the construction company[,] change its relation to the employee and make such employee the servant of the construction company without the consent of the servant or of the construction company, either expressed or implied.").

However, as correctly argued by Defendants in their opposition of law (and ignored by Plaintiff in both his opening memorandum of law and reply memorandum of law), such "[k]nowledge and approval *may be inferred* where the servant, continuing in the service, takes his orders from some one other than the hirer or the hirer's representative." *Murray*, 229 N.Y. at 113; (emphasis added) *accord, Carouso v. Empire Case Goods Co.,* 63 N.Y.S.2d 35, 39 (N.Y. App. Div., 4th Dep't 1946); *Virnig v. United States*, 22-CV-0775, 2023 WL 4305217, at *6 (N.D.N.Y. Jun. 30, 2023); *Porter v. United States*, 13-CV-7332, 2015 WL 1004953, at *4 (S.D.N.Y. Mar. 3, 2015).

A key limiting principle of this exception is that the servant must *not* "remain[] subject to the general orders of the person who hires and pays him." *McNamara v. Leipzig*, 227 N.Y. 291, 295-96 (N.Y. 1910) ("A servant lent or let by his master to another does not become the servant of the other because the other directs what work is to be done or in what way it is to be done. If the servant *remains subject to the general orders of the person who hires and pays him*, he is still his servant, although specific direction may be given him by the other from time to time as to the work to be done. The other person has the right to exercise the degree of control of the servant essential to secure the fulfillment of the agreement between the master and himself.") (emphasis added), *accord, Bartolomeo v. Charles Bennett Contracting Co.*, 245 N.Y. 66, 70 (N.Y. 1927);

16

*cf. Murray*, 229 N.Y. at 113 ("Here the hirer's representative was, or seemed to be, in continuous authority.").

Here, the Complaint is replete with factual allegations plausibly suggesting that, between when he stepped out of his truck at the loading dock and when he stepped off that dock, Plaintiff took orders from someone other than Salanger Trucking – namely, the Postal Expeditor – upon penalty of having his "non-sensitive clearance" revoked and/or "driving privileges" terminated. (*See*, *e.g.*, Dkt. No. 1, at ¶ 13 ["The procedure at the Taft Road Facility at all relevant times was for the contractor driver to *check in with* the designated USPS employee (the 'Expeditor') once their truck has been positioned at a specific loading dock."], ¶ 15 ["When a driver parks their truck/trailer at a dock, they are *required* to bring the numbered dock tag inside [to the Expeditor] . . ."], ¶ 16 ["The driver then waits for the Expeditor to . . . *give the driver clearance* to open the truck door."], ¶ 19 ["Plaintiff positioned his truck at a loading dock . . . then entered the building and *reported to* the Expeditor."], ¶ 20 ["The Expeditor then . . . gave Plaintiff *clearance* to open his truck door."] [emphasis added].)

Furthermore, contrary to Plaintiff's argument that the procedure required by USPS aimed only at ensuring *safety* (as may often be the case with other businesses with whom private trucking companies contract), the procedure here is clearly aimed also at ensuring *security*. (*See* Dkt. No. 8, Attach. 7, at 29 [referring to "[s]ecurity clearance[]" requirement]; Dkt. No. 8, Attach. 7, at 56 [referencing "Security Plan" to protect "Personal Information"]; Dkt. No. 8, Attach. 7, at 24 [referring to "security" requirement in "Sanctity of the Mail" provision]; Dkt. No. 8, Attach. 3, at 18, 19, 22, 23, 25 [referencing "security seal" to trailer/cargo door locking

mechanism]; accord Dkt. No. 8, Attach. 5, at 4, 6; Dkt. No. 8, Attach. 7, at 19, 20, 22, 23.)[7]

As a result, the issue becomes whether, at the time of the alleged accident on the loading dock, Plaintiff also remained subject to any general order of Salanger Trucking. His Complaint appears devoid of factual allegations plausibly suggesting that, at the time of the alleged accident on the loading dock, he remained subject to any general orders of Salanger Trucking. (*See generally* Dkt. No. 1.) However, the record warrants a closer examination.

Clearly, at the time of the alleged accident in question, Plaintiff was subject to a specific-route assignment by Salanger Trucking.[8] (*See* Dkt. No. 15, Attach. 8, at ¶ 3 [Salanger Decl.,

---

[7] The Court notes that, in analyzing the application of the governing legal standard, the parties have not discussed, and the Court has not expressly weighed, the fact that at issue here is a federal facility that is governed by federal statutes and regulations that carry criminal (not merely contractual) consequences for movement violations. *See, e.g.,* 18 U.S.C. §§ 1701-1703 (imposing criminal penalties for the obstruction of delay of the mail); 39 U.S.C. § 401 (conferring onto the USPS the authority to regulate its property and operations); 39 C.F.R. § 232.1 (governing conduct on USPS property). The Court understands this to be because the existence of such statutes and regulations could arguably weigh as much against a special employment relationship as it could in favor of such a relationship. In other words, a driver's adherence to USPS-mandated movement protocols could reflect mandatory compliance with a federal security regime designed to protect the sanctity of the mail as much as subordination to discretionary USPS supervision of how the driver performs his work. Having said that, the Court can find no statute or regulation that specifically requires the precise, step-by-step procedures present in this case, and the Court is open to revising the issue on a more complete record.

[8] *See Tunison v. P.C. Richards & Son*, 257 A.D.2d 856, 857 (N.Y. App. Div., 2d Dep't 1999) (finding a truck driver employed by a truck delivery service to be a special employee of a company for which the delivery service had contracted to deliver merchandise where, among other things, the company "controlled the scheduling and location" of the truck driver's deliveries); *Rotoli v. Domtar, Inc.*, 229 A.D.2d 934, 935 (N.Y. App. Div., 4th Dep't 1996) (finding a truck driver employed by an employee rental agency to be a special employee of a shipping company with which the employee rental agency had contracted where, among other things, "[the driver's] various destinations were directed by [the shipping company]"); *cf. Mann v. Weaver*, 276 N.Y.S.2d 159, 161 (N.Y. App. Div., 3d Dep't 1967) (finding a tractor driver employed by a truck leasing company to be a special employee of an interstate cargo hauler with which the truck leasing company had contracted where, among other things, the interstate cargo hauler "dispatched" the tractor driver); *Donoghue v. De Carolis*, 222 N.Y.S.2d 398, 399 (N.Y.

stating that Plaintiff "transport[ed] mail from and between various postal facilities" and that "his driving route was assigned by Salanger"]; Dkt. No. 15, Attach. 3, at ¶ 9 [Waltos Decl., stating that "Salanger Trucking assigned me to a specific route"]; *cf.* Dkt. No. 8, Attach. 7, at 43 [attaching page "11" of Highway Contract Transportation, stating that "[t]he offeror must include a detailed management plan" that "must address the offeror's plan for all situations listed below," including the "[a]bility to . . . dispatch all surface vehicles"].)   However, based on the current record, it is far from clear that, once he had been assigned such a specific route, and once he was in the middle of performing a delivery, Plaintiff could be re-assigned to a different route – especially without having his "non-sensitive clearance" revoked and/or "driving privileges" terminated.

It also appears, at the time of the alleged accident on the loading dock, Plaintiff remained under the general duty to contact Salanger Trucking in the event of either a delay or any impetus for shouting or harassing conduct toward a postal employee.   (*See* Dkt. No. 15, Attach. 7, at 2-3 [Ex. D to Waltos Decl., attaching "Facts about Salanger Trucking Operations," which stated, among other things that, "in the event of a delay you should notify our office and/or submit a request with the reason and extra time worked" and that "[d]o not engage in any shouting or harassing conduct towards any postal . . . employee at any time. Walk away and notify myself, our staff or the transportation office/postmaster"]; *cf.* Dkt. No. 15, Attach. 8, at ¶ 4 [Salanger Decl., stating that, "[t]hroughout his work with Salanger, [Plaintiff] was under the direction and

---

App. Div., 3d Dep't 1961) (finding a truck driver employed by a truck lessor to be a special employee of a truck lessee with which the truck lessor had contracted where, among other things, the truck lessee "assigned" the truck driver a load to transport in the truck lessor's truck from New York to Pennsylvania).

supervision of Salanger"].)   However, again, based on the current briefing, it is unclear whether any such a continuing general order was meaningful to the issue of control, given that there was neither a delay nor conflict with a USPS employee.

Based on the current record, the Court is unable to find an error that was clear.

**B.    Plaintiff's Argument Regarding Factors Other than Control**

Turning to the thirteenth argument set forth in Plaintiff's opening memorandum of law (regarding factors other than control), the Court must reject that argument as unpersuasive.

**1.    Factor of Who Is Responsible for the Payment of Wages and the Furnishing of Equipment**

In support of his argument that it is clear that Salanger Trucking paid Plaintiff's wages (after being paid a fixed contract amount by the USPS), Plaintiff cites only "*Couch, supra*." (Dkt. No. 23, Attach. 2, at 16.)   In *Couch*, the Seventh Circuit observed that "[t]he parties agree that the . . . second factor[] [of Illinois' three-factor statutory test for special or borrowed employment, which regarded whether the loaning employer must pay the employee's wages even though that employee is working for another employer] [is] present here."   *Couch v. United States*, 694 F.3d 852, 858 (7th Cir. 2012).

For the sake of brevity, the Court will assume that the plaintiff's general employer in *Couch* was indeed paid a fixed contract amount (even though Plaintiff neglects to cite a portion of *Couch* establishing that fact).   The Court will also not linger on the fact that, in *Couch* the USPS was not the general employer's *sole* client (as the USPS appears to be Salanger Trucking's sole client here).   *See Couch*, 694 F.3d at 855 ("B & B Trucking also works for FedEx and other private carriers, but it derives at least 90 percent of its revenue from its contracts with the Postal Service.").

20

More important is that Plaintiff does not even attempt to explain how the factor of whether "the loaning employer must pay the employee's wages even though that employee is working for another employer" (under Illinois law) is the same as the factor of "who is responsible for the payment of wages" (under New York law).

Furthermore, Plaintiff completely ignores the fact that, in its underlying Decision and Order, what this Court found was that the USPS was essentially responsible for the payment of wages because it "effectively" paid Plaintiff's wages due to (1) the fact that Plaintiff's only job duty was to transport mail to and from USPS facilities and (2) the fact that Salanger Trucking's "only business" was as a supplier to the USPS.   (Dkt. No. 17, at 17 & n.5.)   Similarly, Plaintiff fails to even attempt to distinguish the three New York State cases cited by the Court in rendering that finding: *Mitchell v. Eaton's Trucking Serv., Inc.*, 85 N.Y.S.3d 254, 256-57 (N.Y. App. Div., 3d Dep't 2018); *Cameli v. Pace Univ.*, 516 N.Y.S.2d 228, 229 (N.Y. App. Div., 2d Dep't 1987); and *Ott v. Steingart Woodcrafters, Inc.*, 959 N.Y.S.2d 91, at *3 (N.Y. Sup. Ct., Kings Cnty. 2012).   (*Id*. at 17-18.)

Finally, Plaintiff fails to expressly challenge the Court's finding that "almost all of the relevant equipment" that was to be used or relied on by Plaintiff during the performance of this critical aspect of his job (including, most notably, the numbered dock tags) was furnished by USPS.   (Dkt. No. 17, at 18.)

For all of these reasons, the Court must continue to find that this factor weighs in favor of Defendants' motion to dismiss.

### 2.     Factor of Who Has the Right to Discharge the Employee

In support of his argument that Salanger Trucking had the right to discharge Plaintiff, whom it could have reassigned to non-driving duties, Plaintiff again cites only "*Couch*, *supra*."

21

(Dkt. No. 23, Attach. 2, at 16.)   In *Couch*, the Seventh Circuit observed that "both parties agree" that Plaintiff was not a borrowed employee pursuant to Illinois' common-law test for special or borrowed employment (which is analogous to New York's test).   *Couch*, 694 F.3d at 857. However, it rendered no express judicial finding regarding the "right to discharge" factor contained in New York's test.   *Id.*

In any event, Plaintiff ignores the fact that, in its underlying Decision and Order, what this Court found was that the USPS *effectively* had the right to discharge Plaintiff by (a) revoking his "non-sensitive clearance" to access Defendant's facility and/or (b) terminating his "driving privileges."   (Dkt. No. 17, at 19.)

Moreover, the fact that Salanger Trucking could have continued to employ Plaintiff (which again finds no support in the record) is of no materiality here.   Under New York Workers' Compensation Law, the right-to-discharge factor in the special employment test refers to the right discharge the employee from the *special* employment (i.e., the right to end the worker's services for the special employer), not the right to terminate the employee's *general* employment.   *See Thompson v. Grumman Aerospace Corp.*, 78 N.Y.2d 553, 558 (N.Y. 1991) ("[Plaintiff's] his assignment to Grumman could be terminated only by Grumman."); *Matter of Shoemaker v. Manpower, Inc.*, 223 A.D.2d 787, 788 (N.Y. App. Div., 3d Dep't 1996) ("Although Westwood did not have the authority to terminate claimant's services with Manpower, it could remove or preclude claimant or any Manpower employee from its facility at any time.").

For all of these reasons, the Court must continue to find that this factor weighs in favor of Defendants' motion to dismiss.

**3.      Factor of Whether the Work Being Performed Was in Furtherance of the Business of the Special Employer or the General Employer**

In support of his argument that the Court erred in its finding with regard to this factor, Plaintiff cites *Irvin v. Klein*, 271 N.Y. 477, 485 (N.Y. 1936), for the point of law that "so long as the workman retains, even with such limitations [as being subject in specified matters to the will and directions of the person for whom the work is to be performed], the right to determine the details of the performance of the work, he is rather an independent contractor than a servant, and his work, though performed in furtherance of the 'business' of another person, remains the 'business' of the workman."   (Dkt. No. 23, Attach. 2, at 16-17.)

As an initial matter, the Court observes that this point of law appears to expressly assume the existence of the very fact that Plaintiff is disputing here (i.e., that the work being performed was in furtherance of the business of the purported special employer), and merely regards the ultimate finding of control (despite the existence of that fact).   *See Irvin v. Klein*, 271 N.Y. 477, 485 (N.Y. 1936) ("[S]o long as the workman retains . . . the right to determine the details of the performance of the work, he is rather an independent contractor than a servant, and his work, *though performed in furtherance of the 'business' of another person*, remains the 'business' of the workman.") (emphasis added).

In any event, Plaintiff does not squarely rebut the Court's finding that "Plaintiff's general employer was not in any business that was outside of the business of USPS."   (Dkt. No. 17, at 20.)   Indeed, Plaintiff points to no "details of the performance of the work" that he retained between the moment he stepped out of the truck (in order to obtain the numbered dock tag, bring that tag to the Expeditor, "check in with" the Expeditor, wait for the Expeditor to open the appropriate overhead door, and receive clearance from the Expeditor to open his truck door) to

the moment he fell off the loading dock.   (*See generally* Dkt. No. 23, Attach. 2; Dkt. No. 30.)

For these reasons, based on the current record, the Court must continue to find that this factor weighs in favor of Defendants' motion to dismiss.

### C.    Plaintiff's Arguments Regarding the Factor of Control

Finally, turning to the second through twelfth arguments set forth Plaintiff's opening memorandum of law (regarding the factor of control), the Court rejects all but one of those arguments.

More specifically, the Court rejects Plaintiff's second argument (regarding its decision to not credit the entirety of the Declarations of Plaintiff and Richard Salanger), because the Court is not persuaded that the five cases on which it relied are materially distinguishable.[9]   Most notably, Plaintiff does not even attempt to explain why Richard Salanger's assertion that "[t]hroughout his work with Salanger, [Plaintiff] was under the direction and supervision of Salanger" (Dkt. No. 15, Attach. 8, at ¶ 4 [Salanger Decl.]) is not flatly contradicted by Plaintiff's own factual allegations that, after parking his truck at a dock, he was required – upon penalty of revocation of his "non-sensitive clearance" and termination of his "driving privileges" – to (1) obtain the numbered dock tag located outside the dock door, (2) bring the numbered dock tag to a USPS employee designed "the Expeditor," (3) "check in with" the Expeditor, (4) "wait[] for the Expeditor to open the appropriate overhead door corresponding to the numbered dock tag,"

---

[9]      *See Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528-29 (2d Cir. 1985); *Egleston v. The Valspar Corp.*, 15-CV-4130, 2015 WL 6508329, at *7 & n.6 (S.D.N.Y. Oct. 13, 2015); *Rojas v. Roman Catholic Diocese of Rochester*, 783 F. Supp.2d 381, 407 (W.D.N.Y. 2010); *Clarke v. JPMorgan Chase Bank, N.A.*, 08-CV-2400, 2010 WL 1379778, at *14 (S.D.N.Y. March 26, 2010); *Southwick Clothing LLC v. GFT (USA) Corp.*, 99-CV-10452, 2004 WL 2914093 at *6 (S.D.N.Y. Dec. 15, 2004).

and (5) receive "clearance [from the Expeditor] to open the truck door."   (Dkt. No. 1, at ¶¶ 11-
16, 19-20 [Compl.].)   Indeed, this assertion by Mr. Salanger of continuous direction and
supervision during the period in question is conclusory to the extent that it conspicuously fails to
attempt to even describe the nature of that continued control.   (*See generally* Dkt. No. 15,
Attach. 8.)

The Court rejects Plaintiff's third argument (regarding its interpretation of the Dock SOP)
for the reasons stated by Defendants (i.e., the requirements imposed by that document).   *See,
supra,* Part I.B.2.of this Decision and Order.   In addition, the Court finds the distinction between
postal "employee[s]" and "driver[s]" to be of little materiality, given that such policies or
procedures need not expressly recognize special employment for it to exist.[10]   Also
unconvincing is Plaintiff's argument that drivers are not permitted to operate the dock doors only
because they are not trained by the USPS to do so: apart from the fact that the argument is
unsupported by evidence, the procedure in question is clearly aimed at ensuring security, not
simply safety, as explained above in Part III.A. of this Decision and Order.

The Court rejects Plaintiff's fourth argument (regarding the direct communication of the
Dock SOP, training of operation, and assignment of a supervisor) as unpersuasive, because those
facts are not requirements but only factors, which the Court continues to find do not tilt the

---

[10]     A special employment relationship does not have to be expressly recognized in a written
contract or agreement to exist under New York Workers' Compensation Law.   *See Thompson v.
Grumman Aerospace Corp.*, 78 N.Y.2d 553, 557 (1991) ("While the ATS-Grumman contract
provides that ATS is to be considered Thompson's employer, that provision alone is insufficient
to establish as a matter of law that Thompson was not also a special employee of Grumman.");
*cf. Bautista v. David Frankel Realty, Inc.*, 54 A.D.3d 549, 556 (N.Y. App. Div., 3d Dep't 2008)
("The agreement, therefore, regardless of its terms, is not determinative of the issue of whether
plaintiff was defendant's special employee.").

scales against special employment here (especially given the fact that the Expeditor clearly did have to supervise Plaintiff's compliance with the required steps before she opened the dock door for him).

The Court rejects the fifth argument of Plaintiff's opening memorandum of law as supplemented by his second argument of his reply memorandum of law (regarding the Court's "temporary" and "momentary" analysis). Although the Court certainly agrees that the totality of circumstances must be looked at in determining the existence of "special employment" relationship, there is of course clear support for the point of law that the relationship must exist *at the time of the accident or injury.*[11] There is also clear support for the point of law that a "special employment" relationship may exist for a "limited time" or "whatever duration." *See Thompson v. Grumman Aerospace Corp.*, 78 N.Y.2d 553, 557 (N.Y. 1991) ("A special employee is described as one who is transferred *for a limited time of whatever duration* to the service of another . . . .") (citation omitted). Finally, the Court finds it disingenuous to argue that, as a matter of law, such "a limited time period of whatever duration" may not consist of only part of a day (or even for the limited time period in which Plaintiff stepped out of his truck, obtained the

---

[11]     *See, e.g., Ortega v. 669 Meeker Avenue, LLC*, 140 N.Y.S.3d 271, 274 (N.Y. App. Div., 2d Dep't 2021) ("669 Meeker failed to establish, prima facie, that the injured plaintiff was its special employee *at the time of the accident* . . . .") (emphasis added); *White v. Metropolitan Opera Assn., Inc.*, 44 N.Y.S.3d 412, 415 (N.Y. App. Div., 1st Dep't 2017) (agreeing with the motion court that "the Met did not present sufficient evidence to prove that plaintiff was its 'employee' *at the time of the accident*.") (emphasis added); *Jaynes v. Cnty. of Chemung*, 271 A.D.2d 928, 929 (N.Y. App. Div., 3d Dep't 2000) ("In our view, the record establishes "as a matter of law that plaintiff was a 'special employee' of defendant *at the time of his injury*") (emphasis added); *Leone v. Columbia Sussex Corp.*, 610 N.Y.S.2d 586, 587 (N.Y. App. Div., 2d Dep't 1994) ("Under the circumstances, Marman's deposition testimony, at the very least, created a question of fact whether the injured plaintiff was Columbia's special employee *at the time of the accident*.") (emphasis added).

numbered dock tag, brought that dock tag to the Expeditor, checked in with her, waited for her to open the overhead door, and waited to receive clearance to open his truck door).  *See Szymanski v. Aramark Facility Servs., Inc*., 747 N.Y.S.2d 123, 125 (N.Y. App. Div., 3d Dep't 2002) (finding that the plaintiff, who was the general employee of a college, was the special employee of the college's maintenance service provider during the time of his injury even though, during his daily shift, the plaintiff may "*occasionally* may have performed plumbing services on an emergency basis at the request of College employees or students") (emphasis added); *Albanese v. R.C. Billings, Inc.,* 699 N.Y.S.2d 826, 827 (N.Y. App. Div., 2d Dep't 1999) (finding that Daniel Weaver, the employee of a subcontractor, R.C. Billings, became the special employee of another subcontractor, Kimble, for the purpose of moving a chiller through a doorway); *Virnig v. United States*, 22-CV-0775, 2023 WL 4305217, at *6 (N.D.N.Y. June 30, 2023) (D'Agostino, J.) (concluding that the plaintiff became the special employee of the United States during the period of a training exercise, specifically, "upon her arrival at the training lane" on June 7, 2018, when a U.S. Army Specialist started exercising control over her).[12]

The Court rejects Plaintiff's seventh argument (regarding Defendants' purported failure to adduce declarations) for the reasons stated by Defendants (i.e., the fact that, unlike in *Virnig*, Defendant's motion to dismiss was not alternatively cast as one for summary judgment).  *See, supra,* Part I.B.2.of this Decision and Order.   To those reasons, the Court adds that the absence

---

[12]      Because Plaintiff finds out-of-state cases so persuasive, his attention is respectfully directed to *Marsh v. Tilley Steel Co.*, 606 P.2d 355, 358 (Cal. 1980) ("The borrowing arrangement was temporary only, usually during a period of half of a day or less . . . ."), and *Charles v. Lincoln Const. Co.*, 235 Ark. 470, 472 (Ark. 1962) ("It further appears that at times the appellant would work part of a day on the school [construction] job and the balance of the day at a Lincoln Construction job.").

of such declarations in no way supports a finding of the irrefutability of the Declarations of Plaintiff and Richard Salanger (which often contradict the Complaint and are conclusory).

The Court rejects Plaintiff's eighth argument (regarding Defendant USA's position that drivers are independent contractors when they cause injuries to third-parties while out on the road) as immaterial to the current case, which did not involve an injury out on the road but an injury in a USPS facility while the driver was complying with step-by-step instructions under the supervision of an Expeditor.   In other words, the Court did not find Plaintiff to be USPS's special employee when he was out on the road but only for the limited time period in question.

The Court rejects the ninth argument of Plaintiff's opening memorandum of law as supplemented by the first argument of his reply memorandum of law (regarding the Seventh Circuit's decision in *Couch*) for the reasons stated by Defendants in Part I.B.2.of this Decision and Order and the reasons stated by this Court in Part III.B.1. of this Decision and Order.   To those reasons, the Court adds three points.

First, the record in *Couch* appears bereft of any indication of what in particular Mr. Couch was doing when his foot was run over by a forklift as he was making a delivery to the Elk Grove Village postal facility on July 29, 2008: no indication exists that he was following step-by-step instructions under the supervision of a USPS employee.

Second, the fact that the plaintiff in *Couch* was required by contract and/or policy to wear a certain badge and remain in contact with his general employer (just as Plaintiff purportedly was here) is of little consequence, because (a) as the Court explained above regarding Plaintiff's third argument, contracts and policies need not expressly recognize special employment for it to exist, and (b) for the reason explained above in Part III.A. of this Decision and Order, it is unclear whether the "onboard communication systems" order in this case was meaningful to control here.

28

Third, elaborating on Defendant's argument that the Seventh Circuit's analysis hinged on three-factor statutory test for special or borrowed employment under Illinois law, the Court respectfully reminds Plaintiff that, of course, its mission here is to carefully predict how the New York Court of Appeals would rule in interpreting New York State law (including, if necessary, by giving proper regard to relevant rulings of New York's lower courts).[13]   While "other persuasive data" may sometimes be considered, "the law of other jurisdictions" may be considered only to the extent that such law is "on the same issue" or is a "sourc[e]" that the New York Court of Appeals "might rely upon in deciding the question."   *DiBella v. Hopkins*, 403 F.3d 102, 112 (2d Cir. 2005).   As a result, the Court has trouble treating, for example, a party stipulation regarding the factor of whether "the loaning employer must pay the employee's wages even though that employee is working for another employer" under Illinois law as presenting "the same issue" as a judicial finding regarding the factor of "who is *responsible* for the payment of wages" under New York law.

Turning to Plaintiff's tenth argument (regarding *Kwitek*), the Court rejects that argument

---

[13]     *See Chufen Chen v. Dunkin' Brands, Inc*., 954 F.3d 492, 499 (2d Cir. 2020) ("Where state law is unsettled, we are obligated to carefully . . . predict how the state's highest court would resolve the uncertainty or ambiguity. . . .   Absent a clear directive from a state's highest court, federal authorities must apply what they find to be the state law after giving proper regard to relevant rulings of other courts of the State.") (internal quotation marks and citation omitted); *Michalski v. Home Depot, Inc*., 225 F.3d 113, 116 (2d Cir. 2000) ("Absent law from a state's highest court, a federal court sitting in diversity has to predict how the state court would resolve an ambiguity in state law."); *Maska U.S., Inc. v. Kansa Gen. Ins. Co.*, 198 F.3d 74, 78 (2d Cir. 1999) ("To the extent that state law is uncertain or ambiguous, this Court must carefully predict how the state's highest court would resolve the uncertainty or ambiguity. . . . In making this prediction, we give . . . proper regard to relevant rulings of the state's lower courts.") (internal quotation marks omitted); *Travelers Ins. Co. v. 633 Third Assocs*., 14 F.3d 114, 119 (2d Cir.1994) ("Where the substantive law of the forum state is uncertain or ambiguous, the job of the federal courts is carefully to predict how the highest court of the forum state would resolve the uncertainty or ambiguity.").

for the reasons stated by Defendants: the fact that the Court twice acknowledged the parties' competing arguments regarding *Kwitek*, before expressly adopting *all* of Defendants' arguments, which included their arguments that *Kwitek* is distinguishable because (a) it did not address New York's "special employer" doctrine, and (b) it involved only the FTCA's independent-contractor and discretionary-function exceptions, which are not at issue here. *See, supra,* Part I.B.2.of this Decision and Order. To those reasons, the Court adds that the record in *Kwitek* appears bereft of any indication that, when Mr. Kwitek was injured as he was pushing containers of mail from a loading dock up the inclined floor of his trailer at the LaSalle Post Office Station in Niagara Falls on October 19, 2005, he was following any step-by-step instructions under the supervision of a USPS employee: indeed, to the contrary, Plaintiff's contention was that "the duty and responsibility to load and unload mail was not delegated to Midwest drivers [such as himself] but was in fact retained and exercised by USPS employees." *Kwitek*, 694 F. Supp.2d at 225.

The Court rejects Plaintiff's eleventh argument (regarding *Fowler*) for the reason stated by Defendants (i.e., that, as an out-of-circuit case, *Fowler* does not represent a controlling decision that warrants reconsideration). *See, supra,* Part I.B.2.of this Decision and Order. To those reasons, the Court adds that at issue in *Fowler* was the three-factor statutory test for special or borrowed employment under Illinois law (not New York's common-law test). *See Fowler*, 2011 WL 6753990, at *3, 5 ("[T]he Court turns its attention to the statutory test. . . . "[T]he Government has not carried its burden of showing entitlement to judgment as a matter of law on the first element of the statutory test.").

The Court rejects Plaintiff's twelfth argument (regarding *Virnig*) for each of the two reasons stated by Defendants: (a) the Court relied on *Virnig* only for the undisputed point of law that "a general employee of one employer may also be in the special employ of another"; and (b)

30

in any event, the purported distinction Plaintiff relies on (i.e., the presence of a supporting declaration in *Virnig* and the absence of one in this case) is immaterial to this case (which, unlike *Virnig*, did not address a motion alternatively cast as one for summary judgment).  *See, supra,* Part I.B.2.of this Decision and Order.[14]

Having said all of that, the Court is given pause by Plaintiff's sixth argument, which regards the "absurd" result that would follow if this Court were to find a special employment relationship in the "not uncommon" circumstance of a large facility requiring drivers check in on arrival, pull up to a loading dock to which they are directed, and follow the instructions of the plant personnel as to how and where to unload their trucks.

Granted, Plaintiff offers no cite for his assertion that the circumstance he describes is "not uncommon."  (Dkt. No. 23, Attach. 2, and 8.)  Moreover, the circumstance Plaintiff describes is not exactly the procedure here, which involves, among other things, actively retrieving a dock tag, bringing it to the Expeditor, and reporting to her.  However, Plaintiff's counsel are respected local specialists in New York Workers' Compensation Law, whose proffer of evidence should not be lightly disregarded.  *Cf. United States v. Camacho*, 94-CR-0313, 2004 WL 235257, at *4-5, 7-8 (S.D.N.Y. Feb. 6, 2004) (granting a motion for reconsideration and reopening a hearing based on a court-appointed attorney's "proffer" of information to the

---

[14]    The Court notes that, in their reply, Plaintiff also expresses "concern[]" at Defendants' argument that Plaintiff's claim that he has been "disabled by this accident" is "conclusory . . . [and] unsupported . . . ."  (Dkt. No. 30, at 11-12.)  Given that Defendants have freely acknowledged their receipt of Plaintiff's medical records and bills, the Court has trouble construing Defendants' argument as referring to anything other than Plaintiff's claim that he should receive more money because the accident was *caused* by Defendants and not by his own negligence (e.g., by arguably not recognizing either the wrong door or the wrong truck, and attempting to step onto a moving truck).  (Dkt. No. 26, at 27 [citing Dkt. No. 23, Attach. 2, at 3, n.1].)

government).   Moreover, the remainder of the above-referenced procedure *does* appear somewhat passive in nature, involving waiting and receiving before the resumption of activity (in the form of opening the truck door); and it is arguably not very far removed from the circumstances described by Plaintiff's counsel.   For these reasons, the Court finds it appropriate to carefully examine anew whether the Court of Appeals would indeed find the special employment test satisfied in this context.

As the Court observed in its underlying Decision and Order, "[g]eneral employment is presumed to continue," and "this presumption [may be] overcome [only] upon clear demonstration of surrender of control by the general employer and assumption of control by the special employer . . . ." *Thompson*, 78 N.Y.2d at 557.   As a result, "a person's categorization as a special employee is usually a question of fact." *Id*.; *see also Bautista v. David Frankel Realty, Inc.*, 54 A.D.3d 549, 550 (N.Y. App. Div., 1st Dep't 2008) ("The question of whether a special employment relationship exists is fact-laden and generally presents an issue for the trier of fact.").   "[T]he determination of special employment status may be made as a matter of law where the particular, undisputed critical facts compel that conclusion and present no triable issue of fact." *Thompson*, 78 N.Y.2d. at 557-58.

Fairly characterized, this test demands the exercise of restraint in extending the special employment doctrine to what appears to be a new context (as here, where the sole client of a truck driver's general employer has tasked the driver, upon penalty of discharge, to take specific actions assisting the client in the transfer of the goods being transported, through the use of a piece of equipment furnished by, and while being supervised by, that client). *See, e.g., supra,* note 8 of this Decision and Order (citing four "special employment" cases involving private truck drivers, none of which involved an accident in a context analogous to the one here).

This restraint appears especially warranted on a motion other than one for summary judgment.   For example, here, defense counsel has not yet had the opportunity to depose Plaintiff or Mr. Salanger regarding what meaningful general orders (of Salanger Trucking) Plaintiff may have remained subject to, if any, between when he stepped out of his truck at the loading dock and when he stepped off the dock.   Nor has defense counsel yet adduced evidence regarding any other reason for the procedure imposed on Plaintiff or the extent of supervision by the Expeditor during that period.

In short, the Court finds that, if the doctrine of special employment is to be applied to this context, it should be done on a more complete record.   For this reason, although the Court can find no "clear error" or "manifest injustice" under Fed. R. Civ. P. 59(e), nor any "extraordinary circumstances" warranting relief under cases applying Fed. R. Civ. P. 60(b)(6), the Court finds that it has committed a "mistake" under Fed. R. Civ. P. 60(b)(1) by applying the doctrine to this context based on the current record.

As a result, Plaintiff's motion for reconsideration is granted in part, and Defendants' motion to dismiss is denied in part without prejudice to renewal based on a more complete record.   The remainder of Plaintiff's claims remain dismissed, because the dismissal of those claims was never specifically challenged by him, either below or here.   *See, supra,* Parts I.A. and I.B.1. of this Decision and Order.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for reconsideration (Dkt. No. 23) is **GRANTED in part** (i.e., with regard to the dismissal of his claims against Defendant USA) and **otherwise DENIED** (i.e., with regard to the dismissal of his claims against Defendants USPS and Jane Doe); and it is further

**ORDERED** that the Court's Judgment of September 19, 2025 (Dkt. No. 18) is

**VACATED**, and Defendants' motion to dismiss (Dkt. No. 8) is **DENIED in part** (i.e., with

regard to Plaintiff's claims against Defendant USA) **without prejudice** to renewal based on a

more complete record, and **otherwise GRANTED** (i.e., with regard to Plaintiff's claims against

Defendants USPS and Jane Doe); and it is further

**ORDERED** that Plaintiff's claims against Defendants USPS and Jane Doe remain

**DISMISSED**.

Date:    February 24, 2026
         Syracuse, New York


Glenn T. Suddaby
U.S. District Judge

34